This is an appeal from a judgment dismissing a mandamus proceeding brought to compel the adjustment of a hail loss. The vital facts are not in dispute and are as follows: The petitioners, husband and wife, in the year 1924 were owners of 480 acres of agricultural land in Ramsey county. During the farming season of that year they cultivated and planted thereon 60 acres of rye, 140 acres of wheat, 50 acres of flax and 100 acres of oats, barley and speltz. Their land *Page 822 
was listed by the assessor for hail insurance as required by law. The petitioners desired that the land should be withdrawn from the protection of the state hail insurance fund but each left it to the other to take the necessary steps to effect a withdrawal, and it was not in fact withdrawn, though each thought or assumed that such was the case. In December they learned that a hail indemnity charge was spread against their land. They paid the same and immediately, on or about December 24th, notified the hail insurance department that they had sustained a hundred per cent loss by hail on July 22nd preceding and requested an adjustment. The request was not complied with and the present proceeding was brought.
The contentions on behalf of the petitioners and appellants are that the action of the insurance commissioner, in refusing to authorize an adjustment, amounts to a forfeiture of the insurance; that the insurance contract, as embodied in the statute, should be liberally construed in favor of the insured to avoid such forfeiture; that the provisions of the act looking toward the limitation of the right to present a claim do not prescribe absolute limitations; that there are funds available for the payment if adjustment be granted and the claim supported. On the other hand, the respondent contends that, while the provisions of the act for notice within three days after loss is not an absolute limitation, the matter thereafter is, wholly or to a degree, within the discretion of the commissioner and that after a further period has elapsed, within which the indemnity levy to meet losses must be made, the discretion of the commissioner, exercised against the claimant, should not be disturbed, much less controlled, by mandamus; also that, in any event, a claimant is excluded from the indemnity fund for any given year if his claim is not in the hands of the commissioner before the levy is made, since it can not be paid from any other fund.
It is clear that under the terms of the hail insurance statutes the crop of the claimants was insured at the time of its destruction, if it was destroyed. As the assessor had done his duty it required affirmative action, which was not taken by the claimants, to withdraw from the protection of the fund. The fact that both claimants intended to withdraw is wholly unimportant, since their legal right to the insurance and their legal obligation for the indemnity charge is in no way affected by an unexecuted intention. While it appears that the commissioner of *Page 823 
insurance has manifested a willingness to approve an application for the abatement or refund of the indemnity charge on the land of the claimants, it does not appear that there was any error in spreading it against their land or that it had been wrongfully collected within § 25 of chapter 77 of the laws of 1921 giving authority for abatement and refunds.
Have the insured claimants (the plaintiffs) lost the benefit of the hail indemnity insurance by reason of their failure to notify the insurance commissioner of the loss? That is the question to be considered on this appeal. Its solution obviously depends upon the terms of the contract to be derived from the statutes governing the consequences of the failure of the insured to seasonably take the necessary steps to have his claim adjusted and paid.
Section 16 of the act, chapter 232, Session Laws of 1923, provides:
"Any person claiming a loss by hail under this Act shall notify the commissioner of insurance by registered mail within three days thereafter. . . . If for any reason notice of loss is not given within three days of such damage, if adjustment is granted, the cost of adjustment may in the discretion of the hail insurance commissioner be charged against the claimant, or deducted from the indemnity allowed and shall accrue to the hail insurance fund and may be expended by the hail insurance department for operation and maintenance in addition to the sum provided in § 3 of this act."
Section 7, chapter 77, Laws of 1921, provides:
"The commissioner of insurance shall on or before the twenty-fifth day of October of each year ascertain the amount which is required for the total payment of all loss caused by hail to crops insured by the department and a sum sufficient to pay interest at the rate of six per cent on all warrants issued from the first day of December until called for payment by the state treasurer plus a sufficient sum to maintain and operate the department for the succeeding year, and shall thereupon for the purpose of securing and paying the same levy an indemnity acreage tax sufficient to cover said amount on all cropped land insured (except hay and meadow land) not withdrawn from the operation of this Act as hereinafter specified, provided that the total amount of said indemnity tax shall not exceed in any one year the sum of fifty cents per acre for seven dollars indemnity or seventy-one cents per acre for ten *Page 824 
dollars indemnity. Provided further that if the sum collected by the maximum levy should be insufficient to pay all losses in any one year, the payment of losses shall be prorated. All moneys collected under the provisions of this section shall be paid into the state hail insurance fund."
Section 6 of the same act, as amended by chapter 232 of the Laws of 1923, also provides for a flat tax of one per cent per acre per annum on tillable land for carrying out the provisions of the act and for creating a permanent surplus to be applied in paying losses more promptly, which surplus is to consist of the proceeds of the flat tax plus any excess of collections for the indemnity fund over and above the losses, and it is provided that when the surplus shall exceed five million dollars the excess shall be turned into the state hail insurance fund to pay losses of the next succeeding year. The provisions for adjusting a loss contemplate that the adjuster shall inspect the crops on which damage is claimed, from which it is argued that the adjustment must take place within a time when an inspection may be made. The provisions of the act, either quoted or abstracted above, are all the provisions which seem to bear upon the question in hand. It will be noted that they nowhere in terms limit the filing of claims. The only provision prescribing a definite time for notice (§ 16) makes it the duty of the insured to notify the commissioner within three days, but it further, by clear implication, does not make the failure to notify a condition defeating the insurance, for it provides for the payment of the expense of adjustment, in the discretion of the commissioner, in the event that notice is not given within the three days "if adjustment is granted." The section which provides for the levying of the indemnity charge makes it the duty of the commissioner to ascertain the amount "on or before the twenty-fifth day of October." This limitation is obviously fixed with a view to the certification of the levy for the convenience of those engaged in writing up the tax lists. While it clearly contemplates that all claims must be filed before the levy is made, it does not in terms limit the filing of claims to the 25th of October. This is nevertheless the outside date for determining the total losses in any year and this amount can only be computed by the officer having before him the claims to be embraced therein. The duty of presenting the claims is clearly that of those sustaining losses. *Page 825 
While it is earnestly argued that a belated indemnity claim may be paid out of the permanent surplus fund, we are clearly of the opinion that when the whole of the legislation governing state hail insurance is taken into consideration it contemplates that the indemnity levy for each year will be in such amount as will pay the losses for that year and that a loss, which, through the fault of the claimant, is not taken into consideration in the making of the levy, is a loss for which no indemnity is provided. In other words, we are of the opinion that under the terms of the act one does not have a claim against the indemnity fund if through his fault such claim is not asserted within sufficient time to cause it to enter into the calculation antecedent to the levy. The fund may be only sufficient or insufficient to pay the losses of those who have been diligent. Whether or not a tardy claimant may assert rights against a surplus in the indemnity fund for a given year is not before us and is, of course, not decided.
The surplus fund as such, which is derived from the flat tax and the surplus remaining after the payment of indemnity claims for a given year, is not primarily an indemnity fund. While the legislature has said that it shall be used for the purpose of carrying out the provisions of the act, it has also indicated the main purpose for which it was created. It is to be applied in paying losses more promptly. That is, it may be used to pay losses when adjustment is complete without waiting for the collection of the indemnity and must later be reimbursed from the indemnity fund when the taxes are collected. By indicating that the surplus in this fund above five million dollars shall be turned into the insurance fund to pay losses of the next succeeding year, the legislature has said, by clear implication at least, that no part of that fund, much less while it shall be under five million dollars, shall be used to pay indemnity losses of a current or prior year. The evident purpose seems to be that this fund may be used as a revolving fund but not as a primary indemnity fund.
A proper regard for the manifest intention of the legislature gleaned from the various provisions of the statutes governing state hail insurance requires a holding by this court that a claimant, who does not present his claim for indemnity within sufficient time to have it enter into the calculation of the indemnity for the current year, is not in a position to compel the administrative officers by mandamus to *Page 826 
proceed with the adjustment of his claim. While we have said that the claimants in this case have not proceeded on the theory that there was a surplus in the indemnity fund for the given year and that we do not decide what the rights would be as against such a surplus, it is not to be implied that they would be entitled to assert their claim against a surplus. Obviously, however, it must appear that the legislation should be more specific than it is with respect to limitations upon the right of insured claimants to present their claims, with respect to the effect of delay, and the degree of dependence upon the discretion of the commissioner if notice be not given within three days.
For the reasons indicated, the judgment must be affirmed.
CHRISTIANSON, Ch. J., and NUESSLE, BURR, and BURKE, JJ., concur.